Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CORY HANLEY, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| STRONGBRIDGE BIOPHARMA PLC, JOHN H. JOHNSON, DAVID GILL, GARHENG KONG, JEFFREY W. SHERMAN, MARTEN STEEN, and HILDE H. STEINEGER, | |
| Defendants. | |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Cory Hanley ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Strongbridge Biopharma plc ("Strongbridge" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17

1

C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Strongbridge by Xeris Pharmaceuticals, Inc. ("Xeris").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.[1]

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Strongbridge common stock.

---

[1] For example, the Company reportedly participated in conferences in New York City in recent years.

7. Defendant Strongbridge is a commercial-stage biopharmaceutical company that focuses on the development and commercialization of therapies for rare diseases with unmet needs in the United States. The Company is incorporated in Ireland. The Company's common stock trades on the NASDAQ under the ticker symbol, "SBBP."

8. Defendant Garheng Kong ("Kong") is Chairman of the Board of the Company.

9. Defendant David Gill ("Gill") is a director of the Company.

10. Defendant John H. Johnson ("Johnson") is Chief Executive Officer and a director of the Company.

11. Defendant Jeffrey W. Sherman ("Sherman") is a director of the Company.

12. Defendant Marten Steen ("Steen") is a director of the Company.

13. Defendant Hilde H. Steineger ("Steineger") is a director of the Company.

14. Defendants Kong, Gill, Johnson, Sherman, Steen, and Steineger are collectively referred to herein as the "Individual Defendants."

15. Defendants Strongbridge and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

16. On May 24, 2021, Strongbridge and Xeris announced that they had entered into a definitive agreement under which Xeris will acquire Strongbridge for stock and contingent value rights. Upon closing of the Proposed Transaction, current Xeris shareholders are expected to own approximately 60% of the combined company, while current Strongbridge shareholders are expected to own approximately 40%. The press release announcing the Proposed Transaction states, in pertinent part:

**Xeris Pharmaceuticals, Inc. to Acquire Strongbridge Biopharma plc in Stock and CVR Transaction, Creating an Innovative Leader in Endocrinology and Rare Diseases**

*Transaction Creates Fast-Growing Biopharmaceutical Company with Two Commercial Assets and Robust Clinical Pipeline with Multiple Near-term Inflection Points*

*Diversifies Revenue Base with Two Rapidly Growing Brands in Xeris' Gvoke® and Strongbridge's KEVEYIS®*

*Strongbridge's NDA for RECORLEV® Recently Accepted for Review by FDA; PDUFA Target Action Date Set for January 1, 2022 with Potential Launch in Q1 2022*

*Enhanced Commercial and Operational Platform with Synergies of Approximately $50 Million Expected by the End of 2022*

*Upon Closing of Transaction, Xeris Shareholders to Own ~60% and Strongbridge Shareholders to Own ~40% of Combined Company; Potential for Strongbridge Shareholders to Receive up to $1.00 Per Share in Contingent Value Rights (CVRs)*

*Xeris and Strongbridge to Host Conference Call Today at 8:30 AM ET*

May 24, 2021 07:00 AM Eastern Daylight Time

CHICAGO & DUBLIN & TREVOSE, Pa.--(BUSINESS WIRE)--Xeris Pharmaceuticals, Inc. ("Xeris") (Nasdaq: XERS), a pharmaceutical company leveraging its novel formulation technology platforms to develop and commercialize ready-to-use injectable drug formulations, and Strongbridge Biopharma plc ("Strongbridge") (Nasdaq: SBBP), a global commercial-stage biopharmaceutical company focused on the development and commercialization of therapies for rare diseases with significant unmet needs, today announced that they have entered into a definitive agreement under which Xeris will acquire Strongbridge for stock and contingent value rights ("CVRs"). The agreement, including the maximum aggregate amount payable under the CVRs, values Strongbridge at approximately $267 million based on the closing price of Xeris common stock of $3.47 on May 21, 2021 and Strongbridge's fully diluted share capital. The transaction, which has been unanimously approved by the boards of directors of both companies, with the exception of Jeffrey W. Sherman, M.D., a director in common to both companies, who abstained from the voting, is expected to close early in the fourth quarter of 2021, subject to the satisfaction of closing conditions. Upon close of the transaction, the businesses of Xeris and Strongbridge will be combined under a new entity to be called Xeris Biopharma Holdings, Inc. ("Xeris Biopharma Holdings").

Under the terms of the agreement at closing, Strongbridge shareholders will receive a fixed exchange ratio of 0.7840 shares of Xeris Biopharma Holdings common stock for each Strongbridge ordinary share they own. Based on the closing price of Xeris common stock on May 21, 2021, this represents approximately $2.72 per Strongbridge ordinary share and a 12.9% premium to the closing price of Strongbridge ordinary shares on May 21, 2021. Strongbridge shareholders will also receive 1 non-tradeable CVR for each Strongbridge ordinary share they own, worth up to an additional $1.00 payable in cash or Xeris Biopharma Holdings common stock (at Xeris Biopharma Holdings' election) upon achievement of the following triggering events: (i) the listing of at least one issued patent for KEVEYIS® in the U.S. Food & Drug Administration's Orange Book by the end of 2023 or at least $40 million in KEVEYIS® annual net sales in 2023 ($0.25 per ordinary share), (ii) achievement of at least $40 million in RECORLEV® annual net sales in 2023 ($0.25 per ordinary share), and (iii) achievement of at least $80 million in RECORLEV® annual net sales in 2024 ($0.50 per ordinary share). The minimum payment on the CVR per Strongbridge ordinary share is zero and the maximum payment is $1.00 in cash or Xeris Biopharma Holdings common stock, at Xeris Biopharma Holdings' election.

Upon close of the transaction, current Xeris shareholders are expected to own approximately 60% of the combined company, while current Strongbridge shareholders are expected to own approximately 40%.

\*     \*     \*

**Additional Information**

Upon close of the transaction, the businesses of Xeris and Strongbridge will be combined under Xeris Biopharma Holdings, which will be incorporated in Delaware and will continue to have its principal executive offices in Chicago, IL. On close, Xeris shareholders will exchange each share of Xeris common stock they own for 1 share of Xeris Biopharma Holdings common stock.

Xeris Chairman and CEO, Paul Edick, will act as Chairman and Chief Executive Officer of Xeris Biopharma Holdings. The Xeris Biopharma Holdings board will comprise the other existing Xeris directors, together with John Johnson and Garheng Kong, M.D., PhD, MBA who will join the combined company's board as new independent directors. A director in common to both companies, Jeffrey W. Sherman, M.D., will continue to serve on the Xeris Biopharma Holdings board following the transaction.

Xeris Biopharma Holdings' shares of common stock are expected to trade on the Nasdaq Global Select Market (Nasdaq) under the ticker XERS.

The transaction is expected to close early in the fourth quarter of 2021, subject to customary closing conditions and approval by Xeris and Strongbridge shareholders.

In addition, certain Strongbridge directors, executive officers, CAM Capital and HealthCap VI, L.P., representing approximately 17% of Strongbridge's outstanding ordinary shares, have entered into irrevocable undertakings to vote in favor of the transaction.

SVB Leerink is acting as financial advisor to Xeris, and Goodwin Procter LLP and A&L Goodbody LLP are serving as legal counsel. MTS Health Partners, LP is acting as financial advisor to Strongbridge, and Skadden, Arps, Slate, Meagher & Flom, LLP and Arthur Cox LLP are serving as legal counsel.

*   *   *

**About Xeris Pharmaceuticals, Inc.**

Xeris (Nasdaq: XERS) is a pharmaceutical company delivering innovative solutions to simplify the experience of administering important therapies that people rely on every day around the world.

With a novel technology platform that enables ready-to-use, room-temperature stable formulations of injectable and infusible therapies, the company is advancing a portfolio of solutions in various therapeutic categories, including its first commercial product, Gvoke® in the U.S. Its proprietary XeriSol™ and XeriJect™ formulation technologies have the potential to offer distinct advantages over conventional product formulations, including eliminating the need for reconstitution, enabling long-term, room-temperature stability, significantly reducing injection volume, and eliminating the requirement for intravenous (IV) infusion. With Xeris' technology, new product formulations are designed to be easier to use by patients, caregivers, and health practitioners and help reduce costs for payers and the healthcare system.

Xeris is headquartered in Chicago, IL. For more information, visit www.xerispharma.com, or follow us on Twitter, LinkedIn or Instagram.

**About Strongbridge Biopharma**

Strongbridge Biopharma is a global commercial-stage biopharmaceutical company focused on the development and commercialization of therapies for rare diseases with significant unmet needs. Strongbridge's rare endocrine franchise includes RECORLEV® (levoketoconazole), an adrenal steroidogenesis inhibitor with a New Drug Application that is currently under review by the FDA for the treatment of endogenous Cushing's syndrome, and veldoreotide extended release, a pre-clinical next-generation somatostatin analog being investigated for the treatment of acromegaly and potential additional applications in other conditions amenable to somatostatin receptor activation. Both RECORLEV and veldoreotide have received orphan drug designation from the FDA and the European Medicines Agency. The company's rare neuromuscular franchise includes KEVEYIS® (dichlorphenamide),

6

the first and only FDA-approved treatment for hyperkalemic, hypokalemic, and related variants of primary periodic paralysis. KEVEYIS has orphan drug exclusivity in the United States.

17. On July 29, 2021, the Company filed a Schedule 14A Definitive Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

18. The Proxy Statement, which recommends that Strongbridge shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Strongbridge's and Xeris' financial projections; (ii) the financial analyses performed by Strongbridge's financial advisor, MTS Securities, LLC ("MTS"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

19. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Transaction; (ii) Recommendation of the Independent Strongbridge Directors and Strongbridge's Reasons for the Transaction; (iii) Xeris Unaudited Prospective Financial Information; (iv) Strongbridge Unaudited Prospective Financial Information; and (v) Opinion of Strongbridge's Financial Advisor.

20. Unless and until the material misstatements and omissions (referenced below) are remedied before the September 8, 2021 shareholder vote on the Proposed Transaction, Strongbridge shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Strongbridge's and Xeris' Financial Projections

21. The Proxy Statement omits material information concerning Strongbridge's and Xeris' financial projections.

22. With respect to the "Strongbridge Management Projections," "Strongbridge Adjusted Xeris Management Projections," "Strongbridge Management Pro Forma Projections," the Proxy Statement fails to disclose: (1) all line items underlying Unlevered Free Cash Flow; (2) Strongbridge's and the combined company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

23. With respect to the "Xeris Adjusted Strongbridge Management Base Plan Projections," the Proxy Statement fails to disclose: (1) all line items underlying (i) Standalone EBITDA, and (ii) Pro Forma EBITDA; (2) Xeris' and the combined company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

24. The Proxy Statement provides that "the Strongbridge April 8 Xeris Projections were developed by Strongbridge management based on an equity research report produced by an independent investment bank in March 2021," but the Proxy Statement fails to disclose the identity of the independent investment bank.

25. The Proxy Statement provides that the April 8 Strongbridge Projections and the Strongbridge Management Projections were based on "certain internal assumptions prepared by Strongbridge management about the probability of technical success and the probability of regulatory approvals, launch timing, epidemiology, pricing, sales ramp, market share, market exclusivity, research and development expenses, sales and marketing expenses, general and administrative expenses, effective tax rate and utilization of net operating losses, and other relevant factors related to Strongbridge's long-term operation plan."

26. The Proxy Statement, however, fails to disclose the metrics underlying such internal assumptions and quantify their impact on the April 8 Strongbridge Projections and the Strongbridge Management Projections.

27. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

28. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[2]

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-

29. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning MTS' Analyses

30. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by MTS.

31. The Proxy Statement fails to disclose the following concerning MTS' "*Discounted Cash Flow Analysis*" of Strongbridge: (1) the individual inputs and assumptions underlying the (i) ranges of revenue achievements of 50% to 150%, and (ii) weighted average cost of capital of 12% to 14%; (2) all line items underlying the cash flows to be generated by Strongbridge during the period beginning on July 1, 2021 and ending on December 31, 2036; and (3) the assumptions and basis for assuming no terminal value and not taking into account the cost of future capital raises.

32. With respect to MTS' "*Public Trading Comparable Companies Analysis*" of Strongbridge and "*Precedent M&A Transaction Analysis*" of Strongbridge, the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction MTS observed in its analyses.

33. The Proxy Statement fails to disclose the following concerning MTS' "*Discounted Cash Flow Analysis*" of Xeris: (1) the individual inputs and assumptions underlying the (i) ranges of revenue achievements of 50% to 100%, and (ii) weighted average cost of capital of 10% to 12%; (2) the cash flows to be generated by Xeris during the period beginning on July 1, 2021 and

---

speech.html (footnotes omitted) (last visited Aug. 23, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

ending on December 31, 2036, and all underlying line items; and (3) the assumptions and basis for assuming no terminal value and not taking into account the cost of future capital raises.

34. With respect to MTS' "*Public Trading Comparable Companies Analysis*" of Xeris, the Proxy Statement fails to disclose the individual multiples and financial metrics of each company MTS observed in its analyses.

35. The valuation methods, underlying assumptions, and key inputs used by MTS in rendering its purported fairness opinion must be fairly disclosed to Strongbridge shareholders. The description of MTS' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Strongbridge shareholders are unable to fully understand MTS' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

      **3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

36. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

37. The Proxy Statement provides that the Company's "confidentiality agreement with Party B [] contains a standstill provision that is effective until January 2022."

38. The Proxy Statement, however, fails to disclose the terms of the Company's confidentiality agreement with Party B, including whether such agreement contained a standstill provision *with* a "don't ask, don't waive" (DADW) provision (including its time of enforcement) that would preclude Party B from making a superior offer for the Company.

39. Without this information, Strongbridge shareholders may have the mistaken belief

11

that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Strongbridge shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

40. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

41. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

43. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

44. The false and misleading statements and omissions in the Proxy Statement are

material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

45. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

46. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

47. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the

Company which were or had become materially false or misleading.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

51. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 23, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*